UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN SERVIN and FRANK SERVIN | ) | 3:11-cv-00539-MRK |
|    Plaintiffs, | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| JASON ANDERSON, RICHARD PISANI | ) | JURY TRIAL DEMANDED |
| KEITH MELLO, and the CITY OF MILFORD | ) | |
|    Defendants. | ) | SEPTEMBER 28, 2011 |

## REVISED COMPLAINT

Plaintiffs, Susan Servin and Frank Servin, bring this an action for damages and a permanent injunction against the CITY OF MILFORD, KEITH MELLO, CHIEF OF POLICE in his official and individual capacities, OFFICER JASON ANDERSON, in his official and individual capacities, and OFFICER RICHARD PISANI, in his official and individual capacities to and practice of tolerance, neglect and of police officers to routinely drive Milford police cruisers negligently and or recklessly, in both emergency and non-emergency situations under color of law endangering the lives of citizens lawfully on the roadways of the State of Connecticut. This practice of routine illegal conduct, conducted under color of law caused the death of the Plaintiffs' decedent, David Servin, deprivation of his rights secured under the Fourth and Fourteenth Amendments to the United States Constitution. This action is brought pursuant to Title 42 U.S.C. 1983 and the Plaintiffs' decedent's rights under the constitution, statutory and common law of the State of Connecticut.

# I. PARTIES

1.      On or about July 28, 2009, Susan and Frank Servin were appointed the Administrators for the Estate of their son, David Servin, by the Probate Court for the District of Orange, located in the County of New Haven, and State of Connecticut.  A copy of the appointment is attached hereto as Exhibit A.

2.      At all times mentioned herein the Defendant, City of Milford, was a body politic, formed under the Constitution and laws of the State of Connecticut, with the powers and duties of a municipal corporation formed in conformance with the laws and constitution of the State of Connecticut, including, but not limited to the creation and maintenance of a police department to protect the health and safety of the residents of the City of Milford, and all persons utilizing the public roadways in the City of Milford. At all relevant times, through the City of Milford Police Department, it employed, supervised and directed the conduct of the defendants, Chief of Police Keith Mello, Officer Jason Anderson, and Officer Richard Pisani.

3.      On June 13, 2009 and for a long time prior thereto the Defendant, Keith Mello, was the duly appointed and acting officer acting as Chief of the Milford Police Department.  At all times mentioned herein, the Defendant, Keith Mello was acting as the agent, servant and employee of the City of Milford, within the scope of said agency, acting under color of the statutes, ordinances, regulations, policies customs and usages

of the State of Connecticut and/or the Defendant City of Milford and its Police Department.

4.      On June 13, 2009 and for a long time prior thereto the Defendant, Jason Anderson was a duly appointed and acting police officer employed by the City of Milford.  At all times mentioned herein the Defendant, Jason Anderson was acting as an employee of the City of Milford Police Department, as the agent servant and employee of the City of Milford, within the scope of said agency, and under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Connecticut and /or the Defendant City of Milford and its Police Department.

5.      On June 13, 2009 and for a period of time prior thereto the Defendant, Richard Pisani was a duly appointed and acting police officer employed by the City of Milford.   At all times mentioned herein, the Defendant, Richard Pisani was a probationary officer, acting as an employee of the City of Milford Police Department, as the agent servant and employee of the City of Milford, within the scope of said agency, under color of law, to wit, under color of the statues, ordinances, regulations, policies, customs and the usages of the State of Connecticut and/or the Defendant City of Milford and its Police Department.

## II.  JURISDICTION AND VENUE

6.      Jurisdiction of this court is based upon 28 U.S.C. 1331 and 1343 and on the pendent and supplemental jurisdictions of this Court to entertain claims arising

under state law and as conferred by Title 28 U.S.C. 1387. The claims asserted in this complaint arose in this district.

7.    Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. 1391(a) because the events and transactions giving rise to this action occurred in this district and 1391(b) because the defendants reside in this district.

## III. FACTS

### Allegations Common to All Causes of Action

8.    At all times mentioned herein the Defendant City of Milford owned the motor vehicles operated by its agents, servants and employees, of the City of Milford Police Department, including Jason Anderson and Richard Pisani, who were acting within the scope of their employment, as agents and servants of the City of Milford, under color of the law, as described above.

9.    At all times prior to his death at the hands of the defendants, the Plaintiffs' decedent, David Servin, was a citizen who resided in the City of Orange, County of New Haven and State of Connecticut.

10.   At all times mentioned herein the Defendant, City of Milford was a body politic, formed under the Constitution and laws of the State of Connecticut, with the powers and duties of a municipal corporation formed in conformance with the laws and constitution of the State of Connecticut, as set forth in Conn. Gen. Statute 7-148 (B)(4) including, but not limited to the creation and maintenance of a police department to

4

protect the health and safety of the residents of the City of Milford, and all persons utilizing the public roadways in the City of Milford. The City of Milford was required to and did adopt regulations to enforce standards of conduct on those who served as sworn police officers of the City of Milford.

11.    At all times mentioned herein the City of Milford employed the Defendant Keith Mello as Chief of the Milford Police Department.  As Chief of the Milford Police Department the Defendant, Keith Mello, was responsible for the hiring, training and supervision of the police officers employed by the City of Milford.

12.    In order to effectuate the performance of police duties and powers entrusted to the Police Department by the City of Milford, the City of Milford purchased equipped and maintained motor vehicles to be operated by Milford Police Officers in the performance of their duties.

13.    As Chief of Police the Defendant, Keith Mello, was required to train, supervise and monitor the use of the automobile operated by the sworn officers of the Milford Police Department to ensure that the vehicles, operated under color of law, were operated in accordance with the Motor Vehicle Laws of the State of Connecticut.

14.    On June 13, 2009, and for a long time before that date, Milford Police officers were required to operate the Milford Police cruisers entrusted to their use in a prescribed manner.  Said police officers were required to obey all motor vehicle laws of the State of Connecticut in non-emergency situations, including but not limited to laws relating to racing, speeding, reckless driving, passing on the right, exercising caution at

blinking yellow lights and driving so as to create a risk to the life of others lawfully on the highway.   During emergency operations, Milford police officers, were required to operate their vehicles in a manner prescribed by C.G.S. Section 14-283, which requires the operator to slow down or stop at traffic control lights to ensure safe operation, driving at speeds which do not endanger life or property, and driving with due regard from the safety of all persons.

15.   On June 13, 2009, and for a long time prior thereto the officers of the Milford Police Department commonly drove their police cruisers, in both emergency and non-emergency situations at speeds which endanger the safety of all persons on the roadway, through intersections without due regard traffic lights, without slowing down or stopping in a manner required by law, recklessly, and in violation of the mandatory requirements of Connecticut law.

16.   The Police Department of the City of Milford had the means to stop this illegal conduct by monitoring and reviewing video tapes of motor vehicle operation in accordance with Milford Police Department Ordinance 1:18, disciplining officers who broke the law, and finally by arresting officers for breaking the law of the State of Connecticut.

17.   Instead of taking actions to force compliance with the motor vehicle laws of the State of Connecticut, the Milford Police Department, as a police practice and procedure, choose to ignore the conduct, empowering the Police Officers to drive in a life threatening manner.  This policy, practice and procedure was a violation of the rights

guaranteed to David Servin, under State and Federal law, and led to his death at the hands of a Milford police officer driving his motor vehicle at a speed of ninety-five miles per hour through a red light and a caution light, in a non-emergency situation.

18.    On June 13, 2009 the Defendant, Officer Richard Pisani was driving a police cruiser owned by the City of Milford in a generally southerly direction on Route 1, through the City of Orange, into the City of Milford. At the time of the incident described below the Defendant Pisani was returning to the police station, in a non-emergency operation of the motor vehicle, without police warning lights or siren.

19.    On June 13, 2009, the Defendant Officer Jason Anderson, was driving a motor vehicle owned by the City of Milford in a generally southerly direction in the Town of Orange, heading back to the City of Milford police department. At all times mentioned herein, Officer Anderson was operating his police cruiser to the right of the police cruiser operated by the Defendant Pisani.  At the time of the incident described below the Defendant Anderson was operating the motor vehicle in a non-emergency operation, without police warning lights or siren.

20.    The Defendant Officer Richard Pisani, driving on Rte. 1, through a populous commercial area containing bars, restaurants, food stores, and other businesses in which a maximum speed of forty miles per hour was permitted, accelerated the Milford police cruiser he was operating from a speed of approximately fifty miles an hour, to a speed of over seventy miles per hour, without employing his police lights or siren.

21.     The Defendant Officer Jason Anderson, driving on Rt. 1 through the same populous commercial area as Officer Pisani, in which a maximum speed of forty miles per hour was permitted, accelerated his vehicle to a speed of ninety five miles per hour, without employing either his police light or siren, passing the Pisani vehicle on the right.

22.     As the two vehicles approached the intersection of Route 1 and Dogwood Road, the two Milford Police officers passed through a red light, a yellow blinking caution lights at intersections, without slowing at the caution lights, or taking any other action commensurate with using due regard caution.

23.     At all times mentioned herein, Jason Anderson and Richard Pisani were acting as on duty patrol officers of the City of Milford, utilizing equipment owned by the City of Milford, including but not limited to their police uniforms, police cruisers, which were identified as Milford police cruisers by both the lettering on the vehicle and the equipment on the vehicles, the radios, and other communications equipment in his possession, the camera and taping equipment in the vehicles, and their weapons.  Both officers were also wearing their Milford Police uniforms at the time of the crash.

24.     At the time of the incident described below, Officers Anderson and Pisani were returning to the City of Milford from responding to an interagency incident in the town of East Haven. The dispatch of Anderson and Pisani, the actions taken in East Haven, and the actions taken as they were returning from East Haven, were all part of their official duties as on duty police officers of the City of Milford.

25.     On June 13, 2009, the Plaintiffs' decedent, David Servin, was an occupant in a motor vehicle owned by Ashlie Krakowski, which was making a left hand turn, on to Dogwood Lane from Route 1 in the Town of Orange, County of New Haven, State of Connecticut, in an area to the south of the Pisani and Anderson vehicles. Upon information and belief, the Plaintiffs' decedent was the driver of the motor vehicle, however, due to the severity of the crash as hereinafter set forth, a definitive determination of who was driving the vehicle has not been made at the time of filing this action.

26.     On June 13, 2009 the Defendant, Jason Anderson drove his police cruiser past the Pisani vehicle and to the intersection of Rt. 1 and Dogwood lane, into the passenger side door of the Krakowski vehicle at a speed in excess of ninety miles per hour. The Plaintiffs' decedent, David Servin, was thrown around within the vehicle, sustaining multiple blunt trauma, including but not limited to a broken neck, a broken leg, broken ribs, injuries to his brain, and internal organs.  David Servin suffered fear of imminent death, conscious pain and suffering and ultimately his death.  The injuries, losses and damages suffered by Plaintiffs' decedent were proximately caused by the motor vehicle violation of the Defendants, Pisani and Anderson, in that said reckless operation decreased the amount of time Anderson had to react prior to impact.  Had Anderson obeyed the motor vehicle laws of the State of Connecticut, the losses would have not occurred.  This disregard of motor vehicle laws by Anderson and Pisani was a

direct outgrowth of the policy and practice of the Milford Police Department of ignoring the motor vehicle laws of the State of Connecticut, as described above.

27.    As on duty police officers working for the Police Department of the City of Milford, Officers Anderson and Pisani were subject to the laws and duties imposed by the Connecticut General Statutes, regulations and ordinances of the City of Milford, and the Milford Police Department, including General Order 1:14F, and were required to obey and enforce the criminal and motor vehicle laws of the State and the city ordinances of the towns and cities, enforce traffic violations, report and monitor suspicious activity, and assume responsibility for the care and maintenance of all Milford Police Department issued equipment under their control and use, which included the marked cruisers they were driving.

28.    As on duty police officers working for the City of Milford, Officers Anderson and Pisani were permitted under certain circumstances to disobey the motor vehicle laws of the State of Connecticut, including laws relating to slowing down at yellow caution lights, coming to a full stop at red lights, and speeding. The ability to take such actions is limited to emergency situations and is set forth under C. G. S. § 14-283.

29.    The proper use of police motor vehicles, and the ability to disregard traffic and motor vehicle laws in limited circumstances was part of the policies, procedures, training and supervision of Milford Police officers, responsibilities which were assigned to Chief of Police Keith Mello under the laws of the State of Connecticut and the ordinances and regulations of the City of Milford. In particular, the proper use of motor

vehicles in emergencies, and in non-emergencies after responding to potentially violent situations were subject to the training and supervision duties of Chief Mello, as well as, the correct attitudes for safe driving, non-emergency driving and a definition of patrol driving, the correct usage of speed, strategies for controlling driving space, strategies for intersection approach and control, comparisons of non-emergency driving to emergency driving, maintaining an 'open front zone', identifying space management techniques that help a driver avoid the need to perform an evasive action, identifying the effects of speed, identifying the adjustments necessary for driving at night under non-emergency and emergency conditions, making the adjustments necessary for driving at night, identifying the most common causes of night crashes, identifying the unique concerns with driving at night, identifying the adjustments necessary for driving at night under non-emergency and emergency conditions and identifying the physiological concerns of driving at night.

30.    On the date of this incident, and for a long time prior thereto, Milford Police Officers, acting in both emergency and non-emergency situations, drove the motor vehicles owned by the City of Milford in a dangerous, reckless manner, endangering the safety of citizens legally on the Milford roadways and surrounding communities, creating a virtual certainty that harm would occur.

31.    The practice of reckless operation of Milford Police vehicles was well known by the Milford Police Department, as many Milford Police vehicles were equipped with in-car cameras, a system known as ICop. The ICop cameras

automatically recorded all incidents in which a Milford Police vehicle achieved a speed of over seventy miles per hour, and all incidents in which the operating police officer turned on the ICop system.

32.     Between June 12, 2007 and June 12, 2009, the ICop system recorded 2,607 separate incidents involving Milford Police cruisers. The purpose of the software is to track and monitor equipment operations.

33.     On June 25, 2009, Plaintiffs filed a freedom of information request seeking copies of all video recordings of Milford Police vehicles June 12, 2007 through June 12, 2009.

34.     On July 2, 2009 the Plaintiffs request was acknowledged. On April 19, 2010, the defendants informed the Plaintiffs that providing the copies of these recordings would take a considerable time, as several thousand separate incidents were recorded.

35.     The defendants provided a few recordings which showed a pattern or practice that Milford Police vehicles were being driven in both emergency and non-emergency manners in derogation of the motor vehicle laws of the State of Connecticut. A summary of specific incidents in said recordings which demonstrate this practice is attached hereto as Exhibit C to this complaint. These tapes show repeated instances of Milford Police vehicles operated in a reckless manner, at speeds far in excess of the applicable speed limits, without regard for other vehicles on the roadway during this time frame.

36.    The Milford Police Department, and in particular Chief Mello, had the ability to review the manner in which Milford Police vehicles were being operated by reviewing these videotapes. The Milford Police Department, and in particular Chief Mello, chose to abandon the functionality of the ICOP system and ignore the violations of the motor vehicle laws demonstrated in the videotapes, thereby giving approval of a policy of disregard of the motor vehicle laws of the state of Connecticut.  The Milford Police Department, and in particular Chief Mello, chose to ignore Milford Police Department Ordinance 1:18, which requires that the Milford Police Department appoint a Sergeant to: (a) ensure that all officers follow established procedures for the use and maintenance of mobile video recording equipment, handling of video/audio recordings and completion of MVR documentation; (b) on at least a bimonthly basis, randomly review media to assist in periodic assessment of officer performance, determine whether MVR equipment is being fully and properly used and to identify martial that may be appropriate for training; (c) ensure repairs and replacement of damaged or non-functional MVR equipment is performed; (d) on a monthly basis ensure media not being preserved for any reason is purged from the MVR server and; (e) ensure all statistical reporting requirements are being completed to ensure adequate program evaluation.

37.    Police Chief Keith Mello failed to take timely action to review the videotapes of the operation of the motor vehicles, and failed to timely supervise, instruct or discipline the officers of the Milford Police Department concerning the manner of operation as demonstrated in the videos. The failure to take action as described above

constituted approval of the manner in which the vehicles were being operated. This practice of reckless operation of motor vehicles was an extreme danger to the motoring public, pedestrians and others on Milford roadways as well as in other towns in which the Milford police vehicles were operated.

38.     Rather than provide the videotapes of operation to the Plaintiffs, as required under the freedom of information laws of the state of Connecticut, the defendant, City of Milford, operating through its agents servants and employees, intentionally destroyed the videotapes which were in their custody and control.  On September 27, 2010, the Plaintiffs were notified that the Milford Police Department had destroyed all of the remaining 2,463 recordings by having an agent of the Milford Police Department intentionally delete these items from the database.

39.     The intentional destruction of the evidence of the manner of operation of the Milford Police vehicles from June 12, 2007 through June 12, 2009 was found to be a violation of the State Freedom of Information Laws by the State Freedom of Information Commission on April 27, 2011.

40.     In addition to the ICop recordings showing disregard of the motor vehicle laws of the State of Connecticut, the Milford Police Department received complaints concerning the reckless manner in which the motor vehicles of the department were being operated by the employees of that Department. The Chief of Police, Keith Mello, failed to investigate these complaints, take disciplinary action against the officers who were the objects of these complaints, and by his failure to supervise, train, or discipline,

gave approval to the practice of operating Milford Police vehicles in a reckless manner. *See* Exhibit B attached hereto.

42.    As a consequence of the Defendants actions and omissions, the Plaintiffs' decedent was deprived of his ability to enjoy life, and to earn money all to his loss and damage.

42.    As a further result of the Defendants' actions and omissions, the Plaintiffs' estate incurred bills for medical treatment, funeral expenses and burial, to their loss and damage.

## IV. CLAIMS FOR RELIEF

**COUNT ONE:**        **Violation of Civil Rights**

43.    At all times relevant to this action the Defendants, Officers Jason Anderson and Richard Pisani and Chief Keith Mello were duly appointed police officers employed by the Defendant City of Milford in the Defendant City of Milford Police Department, acting within the scope of their employment and under color of law, as described above.

44.    As Chief of Police, of the City of Milford, Defendant Keith Mello was required to hire, supervise, monitor the conduct and ensure that officers acting on behalf of the City of Milford obeyed the laws of the State of Connecticut, including the motor vehicle laws of the State of Connecticut.

45.     Amongst the laws that Defendant, Keith Mello was required to train the Milford Police force to obey, and ensure that the Milford Police personnel were obeying were the following:

a) C.G.S §14-224 (c).  Illegal racing upon a public highway (C.G.S §14-224 (c));

b) C.G.S §14-299(c).  Driving with caution in response to a blinking yellow traffic control signal;

c) C.G.S § 14-218a.  Operating motor vehicles at a rate of speed greater than is reasonable, having regard to the width, traffic and use of highway in violation of;

d) C.G.S. §14-218a. Operating motor vehicle at a rate of speed greater than the posted speed limit;

e) C.G.S. §14-219. Operating motor vehicles, at a rate of speed greater than fifty-five miles per hour.

f) C.G.S. §14-222. Operating motor vehicles, recklessly, having regard to the width, traffic and use of such highway in violation of § 14-222;

g) C.G.S. §14-222. Operating motor vehicles, at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle, in violation of § 14-222;

h) C.G.S. §14-233. Operation of emergency vehicles, including police cruisers in emergency situations at intersections, at speeds which do not endanger the

life or property of others in emergencies, and with due regard for the safety of all persons and property.

46.    It was a policy or practice of the Defendant, City of Milford, acting through its agents, apparent agents, servants and employees, including Chief Mello   to improperly, and inadequately train and instruct, supervise and monitor the members of the City of Milford Police Department, including the individual Defendants Jason Anderson and Richard Pisani, in the proper manner of operation of police cruisers, in obedience with the laws of the State of Connecticut, as listed above, both in emergency and non-emergency settings.

47.    As a result of the policy of the  Defendant, City of Milford, acting through its Chief of Police, as described above, the members of the Milford Police department routinely  violated the motor vehicle laws of the State of Connecticut, in both emergency and non-emergency situations, speeding, speeding  through caution lights , driving in a reckless manner in both emergency and non-emergency situations in populated areas, violating the laws of the State of Connecticut as set forth above, ignoring the safety of citizens on the roads of Milford and nearby communities, endangering the life of the other drivers and passengers on the roadway, and thereby depriving the citizens of their civil rights, including the right to live free of physical harm and death caused by government officials operating Milford Police cruisers.

48.    This procedure of intentional violation of the motor vehicle laws of the State of Connecticut by the Officers of the Milford Police Department was caused and

permitted by the failure to monitor, train, discipline or supervise the employees, as described above, by the Milford Police Department and the Chief of Police. This abusive conduct, engaged in under color of law by agents of the Milford Police Department Pisani and Anderson, was a proximate cause of the injuries, losses and death of the Plaintiffs' decedent, David Servin, as described herein.

49.    The Defendants Pisani and Anderson were required, under the facts and circumstances which existed at the time of the collision, to operate their motor vehicles in the same manner as any other operator of a motor vehicle in the State of Connecticut at the same time and place. The Defendants were required to obey all motor vehicle laws, including those which prohibit speeding, reckless driving, racing and passing on the right, and those which require affirmative actions such as observing caution while approaching caution lights. The Defendants were not entitled to any special exemption from the law because of their status as sworn police officers.  The Defendants actions were part of the general  policy or practice of the Milford Police Department of ignoring motor vehicle laws, driving in a manner to endanger the lives of citizens lawfully on the roadways of Milford and surrounding towns.

50.    The Defendants, acting under color of law, as described above, violated the following clearly established and well-settled federal constitutional rights of David Servin, including but not limited to:

a)    Freedom from unreasonable seizure of his person

b)      Freedom from the use of excessive, unreasonable and unjustified force against his person.

51.      The Defendants operation of the motor vehicles of the City of Milford, driving at speeds of over seventy and ninety miles an hour in a forty mile an hour zone, ignoring caution lights and recklessly endangering the lives of other citizens on the road was conducted in accordance with the practice of ignoring the motor vehicle laws of the State of Connecticut, in both emergency and non-emergency situations. This practice was known by the hierarchy of the Milford Police Department, but was ignored. The practice was an unreasonable, unnecessary and an excessive abuse of the lawful obligations and duties of sworn police officers and a deadly violation of David Servin's civil rights, and a proximate cause of the losses herein.

52.      The pattern and practice of the Milford Police Department of ignoring motor vehicle laws was recorded in a complete and programmatic manner through the instillation of recording devices on Milford Police Cruisers. The ICop program automatically recorded operation of cruisers when they were operated at speeds in excess of seventy miles an hour, or in limited other circumstances. . The ICop system recorded over 2500 separate incidents of usage of Milford Police vehicles over a two year period immediately prior to the collision which caused the death of David Servin.

53.      The policies of failing to monitor, supervise discipline and train the Milford Police Department Officers concerning lawful use of Motor Vehicles owned by the City of Milford and the practice of Milford Police Officers of operating their motor vehicles in

violation of the Connecticut Motor Vehicle laws was furthered by the actions of the Milford Police Department in intentionally violating the State of Connecticut Freedom of Information Laws, by delaying production of materials relating to such policies and by destroying the evidence of violations by its police officers. These intentional acts, in and of themselves constituted violations of the civil rights of the Plaintiffs.

54.     The acts and omissions set forth above were a substantial factor in causing the violation of the civil rights of the Plaintiff, as protected under the Constitution of the United States, and under 42 U.S.C. 1983 et seq. and the acts and omissions set forth above were a substantial factor in causing the following severe and permanent injuries to David Servin:

a)      ante mortem pain, anguish and suffering;

b)      fear of death;

c)      death;

d)      complete destruction of his ability to carry on and enjoy life's many activities;

e)      complete destruction of his earning capacity;

f)      funeral expenses.

**COUNT TWO**

**Indemnification**

55.     The City of  Milford, pursuant to General Statutes §§ 7-101a; 7-465 and/or 52-557n, is liable or is required to indemnify its agents, apparent agents, servants

and/or employees, including Chief Mello, Jason Anderson and Richard Pisani for all damages suffered by the Plaintiffs.

56.    Within six (6) months of the occurrence alleged in this case and for which damages are claimed herein, the Town Clerk of Milford received notice in writing in accordance with General Statutes §§ 7-101a(d) and 7-465(a), of the intention to commence said action and the time when and the place where the damages were incurred, a copy of which notice is attached hereto and referred to as Exhibit D.

## IV. PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully requests:

a.)    Compensatory damages;

b.)    Issue permanent injunctive relief barring the Defendants from continuing their practice of  operating Milford Police Cruiser in violation of the Motor Vehicle laws of the State of Connecticut;

c.)    Award Plaintiffs their reasonable attorneys fees and expenses pursuant to 42 U.S.C. 1988;

d.)    Award Punitive Damages in accordance with 42 U.S.C 1988;

e.)    Grant any additional relief to which Plaintiffs are entitled.

**V. JURY DEMAND**

Plaintiffs, Susan Servin and Frank Servin, hereby demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury of all the issues so triable in the Complaint.

DATED this 28th day of September, 2011.

PLAINTIFFS,
SUSAN SERVIN AND FRANK SERVIN

By _____/s/_____
           R. Bartley Halloran (ct 04305)
           Halloran and Halloran
           City Place II – 15th Floor
           185 Asylum Street
           Hartford, CT 06103
           Tel. No.: (860) 726-7810
           Fax No.: (860) 726-7813
           E-mail: *rhalloran@halloranlawct.com*
           Their Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2011 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Katherine E. Rule
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114-1190
krule@hl-law.com

Thomas R. Gerarde
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114-1190
tgerarde@hl-law.com

James G. Williams
The Law Offices of Williams,
Walsh & O'Connor, LLC
37 Broadway, 1st Floor
North Haven, 06473, CT 06473
cwalker@wwolaw.com

Scott Roland Ouellette
Williams Walsh & O'Connor, LLC
37 Broadway, 1st Floor
North Haven, CT 06473
souellette@wwolaw.com

James Newhall Tallberg
Karsten & Tallberg, LLC
8 Lowell Rd.
West Hartford, CT 06119
Email: jtallberg@kt-lawfirm.com