UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN SERVIN and FRANK SERVIN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 3:11cv539 (MRK) |
| | : | |
| JASON ANDERSON, RICHARD PISANI, | : | |
| KEITH MELLO, and the CITY OF | : | |
| MILFORD, | : | |
| | : | |
| Defendants. | : | |

**RULING AND ORDER**

On June 13, 2009, City of Milford police Officer Jason Anderson, while passing another police cruiser, drove his vehicle into the passenger side of a car making a left-hand turn. The driver of the car, David Servin, subsequently died. Plaintiffs Susan and Frank Servin (collectively "Plaintiffs") are the parents of Mr. Servin, and they bring suit against the City of Milford, Chief of Police Keith Mello, Officer Jason Anderson, and Officer Richard Pisani—the last three in their official and individual capacities (collectively "Defendants"). Plaintiffs allege that Officer Anderson and Officer Pisani, while driving their police cruisers, were acting under color of law and caused Mr. Servin's untimely death and the deprivation of his Fourth and Fourteenth Amendment rights. Furthermore, Plaintiffs allege that Chief Mello failed to appropriately supervise his officers' actions and that the City of Milford had a policy or practice of improperly or inadequately training police officers in the appropriate operation of their cruisers. As a result, Plaintiffs allege, police officers routinely drive negligently and recklessly in both emergency and non-emergency situations.

1

Pending before the Court is Defendants' Motion to Dismiss for failure to state a claim upon which relief might be granted. As the Court finds that the Complaint clears the hurdle of "plausibility" erected at this stage of litigation, Defendants' Motion to Dismiss [doc. # 39] is DENIED.[1] The Court finds that the claims filed before it are sufficiently distinct from those filed in state court, and therefore does not abstain. It is one thing to survive a motion to dismiss, another thing to survive summary judgment. Only time will tell whether Plaintiffs have a valid claim. There are too many unknown facts at this stage of the proceeding.

## I.

The Court must apply a familiar standard when ruling on any motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. The Court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of the City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing the plausibility of a plaintiff's allegations, the question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the

---

[1] As the parties do not brief the issue of whether Defendants are shielded by qualified immunity, the Court does not address that question in this opinion.

plaintiff's claim for relief. *Twombly*, 550 U.S. at 556; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d Cir. 2010) ("[W]e reject [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."). Simply put, "[w]hile a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 129 S. Ct. at 1949).

## II.

When a motion is challenged for failure to state a claim, the Court accepts the facts as alleged. *See id.* As it finds in Plaintiffs' favor without considering Plaintiffs' Exhibits A or B, the Court need not address their admissibility at this stage of the litigation. *See* Pls.' Opp'n [doc. # 40-1] Exs. A & B. Similarly, the Court need not address the "spoliation of evidence" dispute raised by the parties.

On June 13, 2009, Officers Pisani and Anderson were returning to the City of Milford police department from an interagency incident in East Haven, Connecticut. Their dispatch, their actions in East Haven, and the actions taken as they returned were all part of their official duties. Both officers drove City of Milford police cruisers and both were on-duty. It was a non-emergency situation, and both officers were operating their vehicles without warning lights or sirens. Although the maximum speed limit in the area was forty miles per hour, both officers were driving at higher speeds. Officer Pisani accelerated from a speed of approximately fifty miles per hour to a speed of over seventy miles per hour, while Officer Anderson was driving at a speed of approximately ninety-five miles per hour. As the two cruisers approached an intersection, they passed through a red light and a yellow blinking light without slowing or taking other precautionary measures.

3

David Servin was driving a motor vehicle owned by Ashlie Krakowski. As Mr. Servin made a left-hand turn, Officer Anderson drove past Officer Pisani's vehicle and into the passenger side door of the Krakowski vehicle at a speed in excess of ninety miles per hour. Mr. Servin was thrown about within the vehicle, sustained multiple blunt traumas, and died. Plaintiffs allege that Mr. Servin also suffered a fear of imminent death and experienced conscious pain and suffering.

Due to his excess speed, Officer Anderson did not have time to react to prevent the crash, and but for the violation of motorist laws, the collision would not have occurred.

### III.

In order to state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or federal law. Here, the analysis breaks down into two inquiries: whether the officers were acting under color of state law and whether their actions deprived David Servin of a right secured by the Constitution or federal law.

### A.

The controlling factor in whether a police officer acted under color of state law is the police officer's action itself. The evaluation of the nature of an officer's action turns on the "totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status) and the relationship of that conduct to the officer's official duties," *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), *aff'd* 409 F. App'x 464 (2d. Cir. 2011) (quotation marks omitted). Whether the police officer is on duty, in uniform, in a police vehicle, is displaying other indicia of authority, or has communicated his or her status as a police officer and the victim's perception of the state actor

are relevant—but not determinative or dispositive—information. *See, e.g.*, *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287-89 (S.D.N.Y. 2005) (discussing many of these factors when evaluating whether an off-duty police officer acted under color of state law).

Ultimately, the "'relevant question' in determining whether an action was taken under color of law 'is not whether the [action] was part of the defendant's official duties but, rather, whether the [action] was "made possible only because the wrongdoer is clothed with the authority of [federal] law."'" *United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006) (quoting *United States v. Walsh*, 194 F.3d 37, 51 (2d Cir. 1999) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941))) (alterations in original).

Defendants argue that the action that caused David Servin's death was not made possible *only* because the officers were clothed in the authority of law. Both Officer Anderson and Officer Pisani were operating their cruisers in a non-emergency situation, without lights or sirens, and neither one invoked any authority of law. Presumably, the speeding officers could have been driving any vehicle at the time of the accident.

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in Plaintiffs' favor, *see Matson*, 631 F.3d at 63, however, the Court believes that Plaintiffs' allegations are plausible. The Court believes it possible that, for example, the police officers were only driving at high speeds because they knew they were clothed with the authority of state law or because they had just been involved in official duties that resulted in them being in a state of excitement.

### B.

The question remains, however, as to whether the collision that caused David Servin's death rises to the level of a constitutional violation requiring the application of § 1983, or

whether it can only be addressed in state tort law. As the Second Circuit has not yet had the opportunity to clarify the applicable standard for a violation of the Fourteenth Amendment's Due Process Clause in non-pursuit, non-emergency collision cases, this Court undertakes a brief review of the relevant law.[2]

First, the Court notes that procedural due process is not implicated here: Plaintiffs "complain[] that state actors caused [the victim's] death, not that in doing so they failed somehow to apply the proper procedures." *McClary v. O'Hare*, 786 F.2d 83, 87 (2d Cir. 1986).

The Supreme Court has stated generally that conduct with "shocks the conscience" violates the substantive guarantees of the Due Process Clause, independent of the absence or presence of state tort law post-deprivation remedies. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ("[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (quotation marks omitted)). This standard is crucial to ensuring that the Fourteenth Amendment does not become a "font of tort law." *Id.* at 848 (quotation marks omitted). As a result, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849; *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)).

Non-negligent acts are evaluated along a "culpability spectrum." *Lewis*, 523 U.S. at 849. Where a state actor is engaged in an action where he or she does not have time for reflection, "'an

---

[2] Plaintiffs also allege that David Servin's Fourth Amendment rights were violated. However, as neither party elaborates on this allegation in their briefs, and as the Court otherwise denies Defendants' motion to dismiss, the Court postpones its analysis of whether David Servin's Fourth Amendment rights were violated.

intermediate level of fault, such as recklessness, is not enough to impose constitutional liability.'" *Pena v. DePriso*, 432 F.3d 98, 113 (2d Cir. 2005) (quoting *Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998)). However, deliberate indifference may be enough to shock the conscience when time for reflection is possible. *See Lewis*, 523 U.S. at 851. ("As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical . . . ."). For example, the Second Circuit regularly applies a "deliberate indifference" standard when evaluating prisoner claims of Fourteenth Amendment violations. *See, e.g.*, *Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009) (standardizing the "deliberate indifference" test under the Fifth, Eighth, and Fourteenth Amendments for claims that government actors disregarded risks of harm to pre-trial state detainees, pre-trial federal detainees, and convicted state and federal prisoners). As summarized by another district court, "[t]he two ends of the culpability spectrum, in terms of both law and fact, can be defined as follows: 'deliberate indifference' when deliberation is 'practical' and 'purpose to cause harm' when instantaneous decisions and immediate judgments are required." *Leddy v. Twp. of Lower Merion*, 114 F. Supp. 2d 372, 375-76 (E.D. Pa. 2000) (finding, at summary judgment, that police vehicle collision case where officer was responding to a call did not meet test for shocking the conscience).

The Court does not want to fall into the trap, described in *Parratt v. Taylor*, of allowing "any party who is involved in nothing more than an automobile accident with a state official [to] allege a constitutional violation under § 1983." 451 U.S. 527, 544 (1981), *overruled on other grounds by Daniels*, 474 U.S. 327; *see also Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (pre-*Lewis* case finding at summary judgment that a police officer's single accident "does not amount to a constitutional deprivation"). On the other hand, this is not a high-speed chase case, or even one in which the police officers were responding to an emergency call, in which the

Court must weigh "the importance of [state officials'] competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Lewis*, 523 U.S. at 852. The officers here had ample time for reflection and allegedly were well aware of the risks they were taking.

The Second Circuit's decision in *Pena* is instructive. There, the Second Circuit found that allegations that police officers failed to prevent—and in fact encouraged and condoned—a colleague's off-duty drinking and driving

> are sufficient to assert that the defendants created a serious danger by acting with deliberate indifference to it. Whether termed 'deliberate indifference' or 'recklessness,' this mental state is sufficient to establish liability in such cases because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.

*Pena*, 432 F.3d at 114 (quotation marks omitted). Although the plaintiffs in *Pena* did not accuse the defendants of "acting with specific intent or desire to cause physical injury," *id.*, and despite the fact that the potential victims of the risk were unknown, the Second Circuit found that plaintiffs had adequately alleged a constitutional violation, at least in part because "the extreme danger of drinking and driving is widely known," *id.*[3]

If police officers who encouraged and condoned another's off-duty drinking and driving acted with deliberate indifference, it would seem that a similar allegation against the intoxicated driver himself would be sufficient to state a claim for deliberate indifference. And if an off-duty

---

[3] The Second Circuit's *Pena* analysis therefore sets forth a lower standard for "deliberate indifference" from that of the Seventh Circuit in *Hill*, a substantially similar but pre-*Lewis* case, which held that "it is not enough to show that a state actor should have known of the danger his actions created. Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996); *see also id.* ("[M]otor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it.").

police officer's drinking and driving could satisfy the deliberate indifference standard, so too could the speeding of on an on-duty police officer merely returning to the police station. In both situations, there appears to have been ample time for reflection, the defendants knew of the potential generalized risks associated with speeding through red lights without lights or sirens, and although potential victims were unknown, the officers nonetheless "deliberately assumed or acquiesced in such risk." *Id.*

At least one other court in this Circuit has concluded that § 1983 claims may never be brought for reckless driving, and that such claims "cannot be saved by the allegation that Defendant Doe, in driving recklessly, was 'deliberately indifferent' to Plaintiff's health and safety." *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 436-37 (S.D.N.Y. 2004). The *Carrasquillo* court reasoned that *Hathaway v. Coughlin (Hathaway III)*, 99 F.3d 550 (2d Cir. 1996), and other Second Circuit cases discussing the "deliberately indifferent" standard permit its use *only* for claims that state officials have violated prisoners rights under the Eighth Amendment with regard to their medical needs. *See id.* at 553. However, the *Carrasquillo* court did not have the benefit of the Second Circuit's guidance in *Pena*, 432 F.3d 98. As clarified in *Pena*, the "deliberate indifference" standard may be applied to non-medical claims and when an individual is not in the state's custody. *See id.*

Relying heavily on *Pena*'s example, the Court holds that Plaintiffs have stated a claim that David Servin's constitutional rights were violated for the purposes of surviving a motion to dismiss. Although this is unquestionably a "closer call," *see Lewis*, 523 U.S. at 849; *Pena*, 432 F.3d at 113, more facts need be established before this Court can conclusively evaluate whether Officer Anderson's and Officer Pisani's actions shock the conscience, *see Lewis*, 523 U.S. at 850 ("Deliberate indifference that shocks in one environment may not be so patently egregious in

another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."). For the purposes of this motion, Plaintiffs' allegations "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

C.

Since § 1983 does not allow for *respondeat superior* liability, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), Plaintiffs must allege more than that the City of Milford employed tortfeasors. They must instead show that the injury was caused by action taken "pursuant to official municipal policy." Municipal sins of omission are policies in certain "limited circumstances" involving failures to train. *See Connick v. Thompson*, ⸻ U.S. ⸻, 131 S. Ct. 1350, 1359 (2011); *see also Hardy v. Town of Greenwich*, No. 3:06cv833 (MRK), 2009 WL 2176117, at *1-2 (D. Conn. July 22, 2009) (discussing the role of final policymakers).

However, while "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983," a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

As this Court recently had reason to observe, this is analysis is slightly complicated by the fact that "deliberate indifference" means two different things—and is evaluated under a different standard—under the two prongs of Plaintiffs' claims. *See Finch v. City of Stamford*, No. 3:10cv748 (MRK), 2011 WL 5245422, at *2 (D. Conn. Nov. 2, 2011) (citing *City of Canton*, 489

U.S. at 388 n.8). In the failure to train context, the need for training must have been "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The test for deliberate indifference in the failure-to-train context is objective and requires more than a showing of mere negligence. *See Farmer v. Brennan,* 511 U.S. 825, 835, 841 (1994).

The Second Circuit has established three requirements for failure-to-train claims. First, "a plaintiff must show . . . that a policymaker knows to a moral certainty that its employees will confront a given situation." *Nicholson v. Scoppetta*, 344 F.3d 154, 166 (2d Cir. 2003) (quotation marks omitted). Second, the plaintiff must demonstrate that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* at 166-67 (quotation marks omitted). Finally, the plaintiff must show that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 167 (quotation marks omitted).

Defendants argue that Plaintiffs' claims against the Chief of Police and the City of Milford are based on only a single motor vehicle accident and therefore are barred. The Court disagrees; Plaintiffs' complaints are based on a widespread practice that allegedly endangers numerous individuals' constitutional rights. At this stage in the proceeding, the Court will take the facts as alleged in the complaint as true; whether there are facts to support this allegation will be determined at summary judgment.

Plaintiffs allege that police officers regularly drove their cruisers "in both emergency and non-emergency situations at speeds which endanger the safety of all persons on the roadway,

through intersections without due regard [for] traffic lights, without slowing down or stopping in a manner required by law, recklessly, and in violation of the mandatory requirements of Connecticut law." Am. Compl. [doc. # 34] ¶ 15. Plaintiffs also allege that Chief Mello was "required to train, supervise and monitor the use of the automobile[s] operated by the sworn officers of the Milford Police Department to ensure that the vehicles, operated under color of law, were operated in accordance with the Motor Vehicle Laws of the State of Connecticut." *Id.* ¶ 13. Plaintiffs allege that "[t]he practice of reckless operation of Milford Police vehicles was well known by the Milford Police Department," as all vehicles were equipped with in-car cameras that turned on and recorded events when the vehicles exceeded a speed of seventy miles per hour. *Id.* ¶ 31. Plaintiffs further allege that "[t]he Milford Police Department, and in particular Chief Mello, chose to abandon the functionality of the ICOP system and ignore the violations of the motor vehicles laws demonstrated in the videotapes, thereby giving approval of a policy of disregard of the motor vehicles laws of the state of Connecticut." *Id.* ¶ 36. Finally, Plaintiffs allege that the Milford Police Department received complaints concerning officers' reckless driving, but that Chief Mello "failed to investigate these complaints" and failed to "take disciplinary action against the officers who were the objects of these complaints." *Id.* ¶ 40.

Drawing all reasonable inferences from these allegations in Plaintiffs' favor, the Court concludes that Plaintiffs have plausibly met all three requirements for a failure-to-train claim. They allege, with regard to the first two elements, that Chief Mello knew about officers' widespread practice of violating Connecticut driving laws and that there has been a history of police officers driving recklessly.

The third prong—alleging that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Nicholson*, 344 F.3d at 167 (quotation

marks omitted)—is a more difficult one for Plaintiffs to meet. There is no constitutional right, as Plaintiffs claim, "to live free of physical harm and death caused by government officials operating Milford Police cruisers." Am. Compl. [doc. # 34] ¶ 47. As noted above, "[i]ndividuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury, [or] (2) to have the government protect them from such an injury." *Carrasquillo*, 324 F. Supp. 2d at 436. There may be, however, a constitutional right to be free from endangerment resulting from a police officer's reckless driving. Therefore, the Court finds that Plaintiffs' allegations just barely satisfy the third requirement.

Plaintiffs have adequately alleged a failure-to-train case for the purpose of surviving Defendants' motion to dismiss. Plaintiffs will face a more difficult test should Defendants file for summary judgment. *See Finch*, 2011 WL 5245422, at *4-5 (describing types of discovery a plaintiff should pursue in a failure to train case).

### D.

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). This requirement may be satisfied at the motion to dismiss stage by alleging facts that (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or *allowed the continuance of such a policy or custom*; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited

deliberate indifference to others' rights by failing to act on information that indicated that unconstitutional acts were occurring. *See id.* (emphasis added).

As described above, Plaintiffs have sufficiently alleged facts that allow for the plausible interpretation that Chief Mello allowed a policy or custom, under which unconstitutional practices occurred, to continue. Plaintiffs' claim against Chief Mello therefore survives Defendants' motion to dismiss.

## IV.

For the reasons discussed above, Defendants' Motion to Dismiss [doc. # 39] is DENIED. In reaching this decision the Court notes that it is not prejudging the case and that the bar for a claim surviving dismissal at this stage is low. The Court anticipates that it will be asked to consider many of these issues again after the parties have conducted discovery.

Per the parties' agreement, *see* Report of Rule 26(f) Planning Meeting [doc. # 18], Defendants have until February 20, 2012—thirty days from this Court's ruling on this Motion to Dismiss—to file an Answer.

**IT IS SO ORDERED.**

_____
Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **January 20, 2012.**

14